Filed 5/30/13  In re V.O. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re V.O., a Person Coming Under the Juvenile Court Law. | B243585 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. LASC NO. CK93153) |
| Plaintiff and Respondent, | |
| v. | |
| ALEX M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Donna Levin, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Plaintiff and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Tracey F. Dodds, Deputy County Counsel, for Defendant and Respondent.

_____

Alex M. (father) appeals from the order adjudicating his son, V.O., a person described by Welfare and Institutions Code section section 300, subdivisions (a) and (b).[1] Father contends the true finding on the subdivision (a), nonaccidental harm, allegation, was not supported by substantial evidence. He does not challenge the true finding on the identical subdivision (b), failure to supervise, allegation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

V.O. was born in September 2007. Mother and father were not married and father had little to do with V.O. until August 2011, when he invited mother to live with him in the paternal grandparents' home. Mother and V.O. moved out in January 2012. One month later, father referred mother to the Department of Children and Family Services (DCFS) for general neglect; specifically, mother's failure to obtain necessary dental work for V.O. Mother explained to a social worker that she was in the process of obtaining Medi-Cal coverage for V.O. because she could not afford the $600 it would cost to have V.O.'s 11 cavities filled. Mother also told the social worker that she moved out of father's home because of his increasing abusiveness towards her and V.O., including one incident in which father tried to choke mother while V.O. was asleep in the room; and a second incident in which father ripped V.O.'s shirt, spat on mother and pulled her hair. V.O. told the social worker that father yelled at him and mother, and he saw father spit at mother; he never saw father hit mother, but father had hit him. Father admitted arguing with mother, but told the social worker that the arguments never got out of control. Father said he was in the process of seeking custody of V.O.

On March 9, 2012, mother obtained a temporary restraining order against father from the family law court. On April 4, mother told the social worker that her request for a permanent restraining order had been denied, but the family law court ordered no visitation for father until after a custody hearing scheduled for April 27. When father went to maternal grandmother's home after the April 4 hearing and demanded to see

---

[1] All future undesignated statutory references are to the Welfare and Institutions Code.

2

V.O., mother called the police. Father acknowledged to the social worker that the issue of visitation was to be adjudicated at a later hearing, but claimed mother had invited him to the house to see V.O. after the hearing. The social worker tried to obtain domestic violence services for mother and V.O., but was told by a caseworker that they did not qualify because the police report lacked sufficient evidence of domestic violence.

On April 14, mother took V.O. to the museum for a visit with father. The visit went well and mother agreed to take V.O. to the park for another visit the next day. At the park, a verbal argument over custody of V.O. escalated into a physical altercation. According to the police report of the incident, father said that when mother refused his request to extend the visit, father picked up V.O. and began to carry him away. Mother grabbed V.O. and struggled with father over the child. During the struggle, mother slapped father. When a bystander approached and asked if they were alright, mother told him to call the police, which he did. Mother told a responding police officer that father had hit her in the stomach with a closed fist. Although mother and father each denied hitting the other, the report stated father was the primary aggressor.

After receiving the police report on April 18, the social worker interviewed V.O., who said: "I went to the park with my mom and dad. We were happy but then my dad punched my mom in the stomach, and my mom started to cry a lot and got sick." V.O. was detained that day and placed in foster care. At the DCFS office later that day, a social worker explained to mother that V.O. was detained because, by taking him to the park, mother exposed him to another incidence of domestic violence, thus endangering him. While the social workers were meeting with mother, father entered and started yelling at the social workers. When he refused to leave, security had to be called to escort father out of the room. During a meeting with father later that same day, father accused the social worker of making false accusations against him; when confronted with the fact that V.O. corroborated mother's version of events at the park, father accused V.O. of lying.

DCFS filed a section 300 petition alleging that V.O. was a person described by subdivisions (a) and (b) of that section. As eventually sustained, paragraph a-1 and b-1

3

of the petition alleged that mother and father "have a history of engaging in violent physical altercations in the presence of the child. On April 17, 2012, the father struck the mother's stomach with the father's fist, inflicting pain to the mother's stomach. The mother slapped father. On [March 3, 2012], the father grabbed and pulled the mother's hair. The father spat on the mother's face in the presence of the child. On [December 31, 2011], the father choked the mother. The father ripped the child's shirt during the violent altercation with the mother. The mother failed to protect the child. The mother allowed the father to have unlimited access [to] the child. Such violent conduct by the father against the mother, and the mother's failure to protect the child, endangers the child's physical health and safety, and places the child at risk of physical harm, damage, danger and failure to protect."

Mother and father denied the petition. Following a detention hearing on April 23, the dependency court found DCFS had established a prima facie case for detaining V.O. pursuant to section 300, subdivisions (a) and (b). V.O. was released to mother on the condition that she continue living with maternal grandmother. Mother's request for a temporary restraining order against father was granted, and father was given weekly two-hour monitored visits.

At a contested jurisdictional hearing on July 11, 2012, father testified that he was at the park with mother and V.O. on April 17. At about 4:00 p.m., father realized he had to be home by 6:00 p.m. under the terms of his then existing house arrest relating to a charge concerning an ex-girlfriend's husband. Father began walking quickly to his car with V.O. Mother followed them and called father's name, but father did not respond. When father picked up V.O., mother tried to grab the child away. Because V.O. was getting scared, father put him down and mother slapped father on the face. Father called the police. After the responding officers told father that mother described the event differently and they were going to arrest both of them, father decided to drop the matter. Father denied punching mother in the stomach with his fist. Father was not aware that V.O. told two different social workers that he saw father punch mother in the stomach. He denied the prior instances of domestic violence alleged in the petition. Finding father

4

not credible, the dependency court sustained paragraphs a-1 and b-1 of the petition. V.O. remained placed with mother, and father was given twice weekly two-hour monitored visits. The court issued a permanent restraining order against father, set to expire on July 11, 2015.

Father timely appealed. Mother did not appeal.

## DISCUSSION

### A. *Substantial Evidence Supports the Jurisdiction Order*

The court based jurisdiction on two separate grounds. First under section 300, subdivision (a), which requires proof that the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted . . . ." (§ 300, subd. (a).)

The second jurisdictional ground was under section 300, subdivision (b) which, in part, requires proof that the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure [of a parent] to adequately supervise or protect the child . . . ."

Father does not challenge the sufficiency of the evidence to support the finding that as a factual matter he committed the various acts alleged in paragraphs b-1 and a-1 of the petition. Nor does he contend that these acts cannot support jurisdiction under subdivision (b) of section 300. On appeal, he argues only that such conduct is not sufficient to support jurisdiction under section 300, subdivision (a). Father is incorrect.

### 1. The Unchallenged True Finding on Section 300, Subdivision (b) Obviates the Need to Review the True Finding on Subdivision (a)

If any one of several enumerated statutory bases for jurisdiction is supported by substantial evidence, a reviewing court need not consider whether other alleged statutory bases are also supported by the evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438,

451.)  As father acknowledges, because father does not contest jurisdiction under section 300, subdivision (b), we need not decide whether jurisdiction was also appropriate under subdivision (a).  (See *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1415, fn. 6.)

Father nevertheless argues that we should reach the merits of his contention because the jurisdictional findings under subdivision (a) could adversely affect him in future custody and/or dependency proceedings.  We are not persuaded.  "[W]e generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]."  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)  In *Drake M.*, the court exercised its discretion to consider the father's challenge to jurisdiction because the outcome of the appeal would mean the difference between the father being an "offending" versus a "non-offending" parent, and that distinction could affect father's custody rights.  There are no similar implications in this case since father will remain an offending parent regardless of the outcome of this appeal.

Father's assertion that the challenged finding will result in his name being placed on the Child Abuse Central Index (CACI) is incorrect.  As DCFS points out, it is the agency's duty, not the court's, to report known or suspected cases of child abuse to the Department of Justice.  That duty is triggered by an investigator determining that it is more likely than not that child abuse or neglect occurred, not by the sustaining of a section 300 petition.  (Pen. Code, § 11169, subd. (a); see also Pen. Code, § 11165.6 ["child abuse or neglect" includes physical injury inflicted nonaccidentally]; Pen. Code, § 11165.12, subd. (b) [a "substantiated report" of child abuse or neglect is one based upon evidence the investigator believes makes it more likely than not child abuse occurred].)  The only CACI-related consequence of the jurisdictional finding is that father cannot challenge his listing on the index.  (Pen. Code, § 11169, subd. (e).)

6

2.    Substantial Evidence Supports the True Finding on Section 300,
      Subdivision (a)

Even if we were to exercise our discretion to consider father's appeal on the merits of the subdivision (a) finding, we would affirm. Upon a challenge to the sufficiency of the evidence to support dependency jurisdiction, we apply the usual rules of conflicting evidence, giving full effect to the respondent's evidence, however slight, and disregarding appellant's evidence however strong. (*In re E.B.* (2010) 184 Cal.App.4th 568, 578.)

In *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598, the court recently held that jurisdiction under section 300, subdivision (a) was supported by evidence that the child was exposed to a series of incidents of domestic violence between his parents, including one incident in which the father physically attacked the mother while she was holding the child.

In this case, father does not challenged the finding that V.O. was exposed to a series of incidents of domestic violence, including father choking mother, hitting mother in the stomach with a closed fist, grabbing and pulling mother's hair, spitting in mother's face, and ripping V.O.'s shirt during one such altercation with mother. Under *Giovanni*, these facts support the jurisdictional finding under section 300, subdivision (a). Father's argument that the domestic violence in *Giovanni* was more severe than that here, and that maternal grandmother told the social worker that she never observed any domestic violence, does not compel a contrary result. The issue is not whether some other case might have more egregious facts but whether substantial evidence supports the jurisdictional finding in *this* case. We hold that it does.

7

**DISPOSITION**

The jurisdictional order is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

8