Filed 7/30/13  In re Ak.L. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re AK.L., a Person Coming Under the Juvenile Court Law. | B244439 (Los Angeles County Super. Ct. No. CK 87427) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALANA L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Dismissed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Alana L. (mother) attempts to challenge the juvenile court's jurisdictional order regarding her daughter, Ak.L. Mother fails to raise a justiciable issue. We therefore dismiss the appeal.

## FACTS AND PROCEDURE

Mother is the parent of Ak.L. (born in 2000) and An.L. (born in 1995). Mother adopted the children in 2006. Both children had been diagnosed with fetal alcohol syndrome, and An.L. had additionally been diagnosed with attention deficit disorder, bipolar disorder, depression, and oppositional defiant disorder. The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in January 2011 when a referral alleged emotional abuse of both children by mother.

### 1. First Amended Petition

DCFS filed a petition, which, as later amended, alleged: (1) mother physically abused An.L. by striking her face and pushing her to the ground; (2) An.L. suffered from suicidal ideation and depression, and on numerous occasions mother had failed to take An.L. to psychiatric appointments, refused to have An.L. assessed for remedial services, and refused to allow An.L. to have education services; (3) mother had used inappropriate methods of discipline, including depriving both children of food and depriving them of sleep by waking them up in the middle of the night to do chores; and (4) mother emotionally abused An.L. by restricting her social interactions and threatening to kick her out of the home, and as a result, An.L. had been hospitalized in a psychiatric facility numerous times. The petition alleged mother's behavior toward An.L. also put Ak.L. at risk of harm.

The juvenile court dismissed all allegations of the petition except a single allegation under Welfare and Institutions Code section 300, subdivision (b).[1] The single sustained allegation stated mother had physically abused An.L. by striking her face, and

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

2

mother's abuse of An.L. created a detrimental home environment that also placed Ak.L. at risk of harm. The court removed An.L. from mother's physical custody and permitted Ak.L. to remain in mother's physical custody. The court ordered family reunification services for mother and An.L. and family maintenance services for mother and Ak.L.

## 2. Section 342 Subsequent Petition

DCFS filed a subsequent petition under section 342 as to Ak.L. alleging mother emotionally abused Ak.L. and failed to protect her by (1) failing to provide adequate amounts of food for Ak.L. and withholding food from her, (2) locking the refrigerator in the home, (3) shaving her head as a form of punishment, (4) forcing her to repeatedly wash all the dishes in the home as punishment and otherwise forcing her to do excessive chores, and (5) and refusing to let her use the telephone in the home. The petition also alleged Ak.L. recently exhibited a thin, malnourished appearance, with her ribs clearly visible. Mother allegedly had been recently arrested for child cruelty and child neglect.

## 3. Withholding Food, Shaving Head, and Excessive Chores

Mother locked food in the freezer so that Ak.L. could not access it. She complained Ak.L. cooked too much food when mother was not at home. In July 2012, when Ak.L. was home alone, an excessive amount of meat went missing from the freezer, and mother punished Ak.L. by shaving her head and taking away four large trash bags of the child's belongings. A social worker visited the home unannounced a few days after this incident. Ak.L. was home alone. The social worker observed a few cans of vegetables in the cupboard and two or three Tupperware containers in the refrigerator. The freezer contained one Tupperware container and a locked toolbox.

Ak.L. told the social worker she received enough to eat in the home. But the only thing Ak.L. had eaten that day was a sandwich at 1:00 p.m., and it was 10:30 p.m. when she reported this to the social worker. Ak.L. reported she was required to wash every dish in the home in April 2012 as a punishment for hiding food and putting dirty dishes in the cupboard. She said she needed to hide food because she was eating it and "didn't want anyone to find it." She said there had not been groceries in the home since February, and she "ran out of food in May."

Mother came home after the social worker called her on her cellular telephone. Mother had a microwave, small refrigerator, apples, and a bin of protein shake mix in her room. She kept her bedroom door locked because Ak.L. would steal things from her room "like apples and pencils." Ak.L. had also taken protein shake mix without mother's permission. The social worker detained Ak.L. after this July 2012 visit to the home. After they left mother, Ak.L. asked the social worker if they could get something to eat.

Ak.L.'s therapist reported mother had a history of withholding food from the children. When An.L. was still in the home, she would sneak food to Ak.L. Ak.L. was identified as having a "failure to thrive" at some point, and she was supposed to be on a high-fat diet to gain weight. Ak.L. had been reverting to previous problematic behaviors in therapy, including lack of eye contact, minimal verbal responses, mumbled speech, and flat effect. She was shutting down during the majority of her joint sessions with mother.

Mother's biological son T.R., who lived with his father, said he remembered mother having locks on the refrigerator and freezer. T.R. lived with his mother until 2003. When T.R. was younger, his school called his father to tell his father T.R. was hoarding food at school. T.R.'s father said mother withholds food as punishment.

### 4. Adjudication Hearing on Section 342 Petition

The court found the previous disposition was not effective in protecting Ak.L. It sustained the allegations under section 300, subdivision (b) that mother had failed to protect Ak.L. by not providing or withholding adequate food, and the allegations under subdivision (c) that mother had emotionally abused Ak.L. in withholding food, shaving her head, and forcing her to repeatedly wash all the dishes in the home.[2] Mother timely appealed.

---

[2]    We hereafter refer to these findings as the "subdivision (b) findings" and "subdivision (c) findings," respectively.

## DISCUSSION

Mother challenges jurisdiction over Ak.L. on the ground that there was insufficient evidence of emotional damage under section 300, subdivision (c). Mother does not challenge jurisdiction on the ground of failure to protect under subdivision (b). Mother acknowledges we may affirm when any single ground for jurisdiction is supported, but argues we should consider her contention because the subdivision (c) finding is deleterious to her "already strained" relationship with Ak.L. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate."].) For reasons explained in the following, we decline to consider the merits of mother's challenge.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue. [Citation.] The justification for this doctrine, which in general terms requires an appeal to concern a present, concrete, and genuine dispute as to which the court can grant effective relief, is well explained by Wright and Miller's hornbook of federal practice: 'The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance. . . .'" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489-1490, quoting 13B Wright et al., Federal Practice and Procedure (3d ed. 2008) § 3532.1, pp. 372-373, fn. omitted.) "An important requirement for justiciability is the availability of 'effective' relief -- that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status. (*In re I.A., supra*, at p. 1490.)

"'[W]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)" (*In re Andy G.* (2010) 183 Cal.App.4th 1405, 1415, fn. 6.)

In this case, striking the subdivision (c) findings would not have any practical, tangible effect on mother's position in the dependency proceeding. (*In re I.A., supra*, 201 Cal.App.4th at p. 1492.) The juvenile court would nonetheless take jurisdiction under the subdivision (b) findings. Although mother asserts her relationship with Ak.L. will suffer if the subdivision (c) findings remain standing, this would be true regardless. Mother would still be an offending parent under section 300, subdivision (b). She fails to demonstrate any prejudicial impact of not considering the merits of her appeal.

In sum, mother's jurisdictional challenge would not defeat dependency jurisdiction or alter the court's dispositional orders. Mother's appeal fails to raise a justiciable issue. We therefore dismiss.

## DISPOSITION

The appeal is dismissed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

6