Filed 9/16/21  In re S.A. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re S.A. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B307669<br>(Los Angeles County<br> Super. Ct. No. 20CCJP02658A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>A.O.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Affirmed.

Law Office of Robert McLaughlin and Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Appellant A.O. (mother) has four daughters. The oldest daughter is S.A. (born Jan. 2005), whose father is David A. The younger daughters are Leilani A. (born June 2012), Sofia A. (born Jan. 2014), and Mia A. (born Dec. 2016), all of whose father is Axel M. (father).[1]

The Los Angeles County Department of Children and Family Services (DCFS) filed a petition pursuant to section 300 of the Welfare and Institutions Code,[2] seeking to have the children declared dependents of the court. As here relevant, the court sustained the counts of the petition alleging that the children were at substantial risk of serious harm based on the parents' domestic violence (§ 300, subd. (b)(1), count b-1) and mother's substance abuse (§ 300, subd. (b)(1), count b-2); and at risk of physical harm and/or sexual abuse based on mother's failure to protect S.A. from sexual abuse by father, which also endangered mother's three younger daughters (§ 300, subds. (b)(1), (d), (j), count b-3).

The juvenile court declared all four children dependents of the court. The court removed S.A. from mother's custody and placed her in David's custody. As for the disposition plan for the three younger children, both mother's and father's respective counsel informed the court the parents had chosen to "submit[] the issue of removal to the

---

[1] David A. and father are not parties to this appeal. S.A. is a subject of the appeal, but mother challenges only select jurisdictional findings and dispositional orders as to her three youngest children.

[2] Unspecified statutory references are to the Welfare and Institutions Code.

2

court." Thereafter, the court removed all three girls from parental custody, and parents were given reunification services.

Mother appeals, contending that substantial evidence does not support assertion of jurisdiction over her three younger daughters on count b-3 under section 300, subdivisions (b)(1), (d), and (j), in that her failure to protect S.A. from father's sexual abuse does not place the younger daughters at risk of physical or sexual abuse. She does not challenge the other grounds for asserting jurisdiction. She also contends that substantial evidence does not support the disposition order removing the younger children from her custody. We conclude that mother has forfeited the latter contention which, in any event, is supported by substantial evidence, and as to the former, we conclude that substantial evidence supports the court's jurisdictional findings.[3] Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Initial Investigation*

In May 2020, following a referral, a DCFS social worker spoke with S.A.'s maternal aunt, V.T. (aunt), who reported that S.A. had told

---

[3]     DCFS contends that we should not reach the merits of mother's contention because she does not contest the other jurisdictional findings that her three youngest children were at substantial risk of harm (based on the parents' domestic violence, mother's substance abuse, and father's sexual abuse of S.A. creating a danger to the children vis-á-vis father), as opposed to mother's failure to protect. Because the jurisdictional findings as to the youngest girls premised on mother's failure to protect S.A. from father's sexual abuse may prejudicially impact mother in the future, we exercise our discretion to consider the contention. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

her that father inappropriately touched her bra, legs, and body under her clothing. Mother also told S.A. not to wear "short shorts" because she did not "trust" father. The aunt informed the social worker that mother had a history of substance abuse.

S.A. told the social worker that father had repeatedly touched her back, legs, and body underneath her clothes from the time she was seven years old, often under the guise of giving her a massage. S.A. also said that mother drank alcohol daily, and after drinking would verbally abuse the children by screaming at them and calling them names ("idiots, stupid, [and] motherfuckers"). S.A. also reported that mother and father frequently argued, using profanity with one another, and father threatened to hit mother. S.A. was afraid to return home.

A few days later, the aunt reported that S.A. had disclosed that father had raped and digitally penetrated her when she was 12 years old. S.A. independently told the social worker and a police officer that, in fall 2017, when she was 12 years old, she had been home alone with father when he came into the room where she was watching television and caressed her face and inner thigh. Father then grabbed S.A. and took her into the parents' bedroom as S.A. tried to fight him off. Father removed S.A.'s clothes, held her hands behind her head, and painfully penetrated her vagina with his penis as she pleaded with him to stop. He was on top of her for 10-to-15 minutes, before ejaculating on her stomach. Father then told S.A. to get dressed, and threatened to harm her younger sisters if she revealed what he had done. S.A. went into the bathroom to clean herself and saw that her vagina was bleeding.

4

A few months later, when she was 12 or 13, S.A. was alone in the bathroom when father came in. He had grabbed S.A.'s wrist and undressed her as she again pleaded with him to stop. Father told her to "shut up." He digitally penetrated S.A.'s vagina for five minutes before she was able to escape. Thereafter, S.A. feared father would sexually assault her again. Every time he touched her during the years following the incidents of abuse, it was in a sexually inappropriate manner.

The social worker visited the family home and met with mother, father, and the three youngest children. Father denied having ever inappropriately touched S.A. Mother said she had never suspected that father touched S.A. inappropriately. Mother said that she and father had argued daily for the past two years and that, on occasion, father engaged in domestic violence against her (pulling her hair and/or pushing her against a wall). Mother wanted to end the relationship. Mother acknowledged she had a history of substance abuse.

The social worker spoke with Leilani and Sofia, and each denied that anyone had ever touched them inappropriately. Sofia confirmed that mother drank beer in the home. Leilani did not respond when asked about mother's alcohol use or her parents' arguments.

Following a detention hearing on May 19, 2020, the juvenile court ordered S.A. detained from mother and released to David, and detained the three younger children from mother and father. The court ordered monitored visitation for mother, and ordered DCFS to provide her with drug testing and other case-appropriate referrals.

*The Jurisdiction/Disposition Report and Last Minute Information Report*

A forensic examiner interviewed S.A. on May 21, 2020. S.A. recounted again the circumstances of the rape in the bedroom and the digital penetration in the bathroom. She said that both incidents occurred when she was in sixth grade. S.A. did not tell anyone about the incidents because her emotions at the time were a "wreck," and she felt as though she had been "hit by a truck of sadness." Prior to the forensic interview, S.A. had a visit with mother, who had broken down "crying" and said that "she was sorry and that this was all her fault and that she was a bad mom."

The social worker interviewed mother on June 10, 2020. Mother said she began using crystal methamphetamine by the time she was 14, stopped for a few years, and began using again as a coping mechanism. Mother reported that she snorted methamphetamine and used cocaine at home when no one else was around. She said she drank two-to-three beers a day and fought with father when she got intoxicated.

Mother described her fights with father as primarily screaming at one another, although she had gone "off on him" once, and the two had pushed each other. Mother denied that the children had ever seen her fight with father, but she acknowledged they had seen her cry and "shut down" at home. Mother believed that she needed therapy to help her process her emotions and end her substance abuse. Notwithstanding the domestic violence and accusations of molestation, mother told DCFS that she relied on father because she mistrusted others and lacked self-esteem, and father had "helped [her] with [her] personal issues."

Mother denied having any awareness that father had sexually abused S.A. However mother knew that S.A. was "cutting herself," and S.A. had "reach[ed] out to older men on the Internet," including sending sexual text messages and putting sexually suggestive photos of herself online. When mother confronted S.A. about her conduct, S.A. locked herself in a bathroom and cut herself, prompting mother to call for help. When asked how she planned to respond to the allegations of sexual abuse, mother said she wanted to protect the children and no longer wanted to live with father. At the same time, however, mother described father as "a great father and a great provider" who had given her a home, and that he was the family's primary earner. She reiterated that father was a "great partner" who helped with her emotional issues.

When the aunt spoke with the social worker, she reported that mother had recently told her that the dependency case "was [S.A.'s] fault," that S.A. "shouldn't have said anything," and that she was the reason "they took away the girls."

The social worker separately interviewed the three younger children. Despite reporting that her parents sometimes engaged in verbal arguments, Leilani did not respond when asked if father ever tried to hurt mother. Leilani reported that mother drank an adult beverage from a blue can with the letters "M-O-D-E" on it (later identified as Modelo beer), which mother described as her "energy drink." When Sofia was asked if her parents ever acted "rough" toward one another, she said father gave mother "pretend hits." When mother

7

was "into trouble" with father, Sofia said her parents would "tell themselves not to do that ever again," and father would tell mother to "calm down so he [wouldn't] get [angrier]." Mia reported that mother drank "a lot [of] beers." When asked how many, the child held up 3, 4, and then 10 fingers before spreading her arms wide and saying, "this much." All three girls denied having been touched in a sexually inappropriate manner.

Between mid-May and mid-July 2020, mother tested positive for methamphetamine once (May 19), failed to appear for four weekly drug tests (on June 8 and 29, and July 10 and 16), and tested negative for drugs five times (on June 11, 18, and 26, and July 3 and 23). Mother told DCFS she was attending domestic violence, substance abuse, and individual counseling programs.

DCFS recommended that the juvenile court assume jurisdiction over the children and make separate dispositional orders for S.A. and the three younger girls. As for S.A., DCFS recommended the court terminate jurisdiction with a final custody order granting David sole physical custody, and giving mother monitored visitation. DCFS recommended that the court remove the three younger girls from parental custody with reunification services in place for both parents.

In an August 2020 last minute information report, DCFS reported that mother remained enrolled in her programs, including a sexual abuse education program (in which mother had missed three classes). Mother's therapist reported that mother "often seem[ed] confused," and the therapist was concerned about her "mental well-being." Between

late July and mid-August, mother tested negative for all substances three times (July 31, August 7 and 18), and failed to test one time (August 12).

Due to the COVID-19 pandemic, mother was permitted only video visitation with her three youngest girls, which was scheduled for three days per week. The girls' caregiver told DCFS that mother's visitation was "very inconsistent." Mother often called late or not at all, and made a variety of seemingly untruthful excuses for her missed visits. When mother did appear for visits, she was often present with other people (who were not adhering to social distancing protocol) and seemed "emotionally overwhelmed." Mother often wanted to cut the visits short, which caused the girls to "experience emotional distress."

*The Jurisdiction/Disposition Hearing*

At the combined jurisdiction and disposition hearing in September 2020, the court admitted DCFS's evidence and heard argument. As previously noted, the court sustained the allegations of the petition that the children were at substantial risk of serious physical harm based on the parents' domestic violence (§ 300, subd. (b), count b-1), mother's substance abuse (§ 300, subd. (b), count b-2), and mother's failure to protect S.A. from sexual abuse by father (§ 300, subds. (b)(1), (d), (j), count b-3).

Proceeding to disposition, the juvenile court declared all four children dependents of the court, removed S.A. from mother's custody, and placed S.A. with David. As for the disposition plan for the three

9

youngest children, both mother's counsel and father's attorney informed the court that both parents had chosen to "submit[] the issue of removal to the court." The court removed the girls from parental custody, and ordered the parents to participate in reunification services. Mother's case plan required that she submit to random drug testing or—in the event of a missed or positive test—a full drug treatment program, a domestic violence support group/victims' program, and sexual abuse awareness and individual counseling. Mother timely filed a notice of appeal.

## DISCUSSION

### I. *Jurisdictional Findings*

Mother's contends substantial evidence does not support the jurisdictional findings that the three younger children (Leilani A., Sofia A., and Mia A.) were at substantial risk of suffering serious physical harm and/or sexual abuse under section 300, subdivisions (b)(1), (d), and (j) due to mother's failure to protect S.A. from father's sexual abuse. We disagree.

### A. *Subdivisions (b)(1), (d), and (j) of Section 300*

Section 300, subdivision (b)(1), which deals with serious physical harm, provides in relevant part that a juvenile court may assert jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . . , as

a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child."

Section 300, subdivision (d), applies specifically to sexual abuse. It states that that the juvenile court may assert jurisdiction over a child that "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code,[4] [because] the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subd. (d).)

Section 300, subdivision (j), deals with sexual abuse of a sibling, and provides that a juvenile court may assert jurisdiction over a child if the child's sibling was abused or neglected, as defined in subdivisions (a), (b), (d), (e) or (i), and "'there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions.'" (*In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197, disapproved on another ground by *In re I.J.* (2013) 56 Cal.4th 766, 775 (*I.J.*).)

---

4      Penal Code section 11165.1, subdivision (a) refers to "sexual abuse" as sexual assault or sexual exploitation as defined by various violations, including inter alia rape and statutory rape (Pen. Code, §§ 261, 261.5, subd. (d)), and lewd or lascivious acts upon a child (*id.*, §§ 289 [sexual penetration], 647.6 [child molestation]). Conduct described as "sexual assault" includes any penetration, however slight, of the vagina by the penis of another person, any intrusion by one person into the genitals of another person (not including acts performed for a valid medical purpose), the intentional touching of the genitals or intimate parts or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification. (*Id.*, § 11165.1, subd. (b).)

Section 300, subdivisions (b) and (d) do not require the actual infliction of abuse on the subject child, but rather only a substantial risk of abuse arising from a parent's failure to protect. (*I.J., supra,* 56 Cal.4th at p. 773.) And while section 300, subdivision (b) requires a showing that the child faces a current risk of harm to sustain jurisdiction, section 300, subdivision (d) does not. (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 803.)

When contemplating whether to assert jurisdiction under section 300, subdivision (j) for sexual abuse of a sibling, the juvenile court considers: "the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).) This subdivision permits the court to take into consideration factors that might not be determinative were the court adjudicating a petition filed directly under subdivisions (a), (b), (d), (e) or (i). (See *I.J., supra,* 56 Cal.4th at p. 774.) Section 300, subdivision (j) vests the court with "'greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*Ibid.*)

Finally, a parent's sexual abuse of one child may constitute substantial evidence of risk to another child in the abuser's household, regardless of the child's sex, age, or biological connection to the abused child. (*I.J., supra,* 56 Cal.4th at p. 766; *In re D.C.* (2015) 243

12

Cal.App.4th 41, 54 [a father's "prolonged and severe" sexual abuse of his 13-year-old adopted daughter put the child's 10-year-old brother at risk of abuse under § 300, subd. (j)], superseded by statute on another ground as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322 (*A.M.*); *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 [father's sexual abuse of elder cohabitant half-sister over the course of five years placed biological daughter at risk of sexual abuse]; *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1415 [two-year-old boy at risk because father sexually abused the boy's 12-year-old and 14-year-old half-sisters]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 91 [rape of 13-year-old daughter reasonably could be found "to be so sexually aberrant" that both male and female children siblings of the victim are at substantial risk of sexual abuse].)

B.   *Substantial Evidence Supports the Court's Jurisdictional Findings*

We review the juvenile court's jurisdictional findings orders for substantial evidence.  (*In re Kadence P.* (2014) 241 Cal.App.4th 1376, 1384 (*Kadence P.*), superseded by statute on another ground as stated in *A.M.*, *supra*, 47 Cal.App.5th at p. 322.)  We resolve all evidentiary conflicts in respondent's favor and draw all reasonable evidentiary inferences to uphold the juvenile court's findings and orders.  (*I.J.*, *supra,* 56 Cal.4th at p. 773; *Kadence P.*, *supra*, at p. 1384.)  Here, ample evidence supported the challenged jurisdictional findings.

First, father sexually assaulted S.A. twice in the family home when the child was in middle school, first by raping the pre-teen in the

13

parents' bedroom and, later, by digitally penetrating her in the bathroom. Father's inappropriate touching continued after these incidents.

Second, it is true that S.A. did not explicitly disclose the sexual abuse to mother after father had threatened to harm S.A.'s sisters if she did. Nevertheless, the record reflects that mother had legitimate concerns about father's behavior. Mother told S.A. not to wear "short shorts" because she did not "trust" father. Moreover, mother was aware that S.A. was "reaching out to older men on the Internet," sending sexually suggestive text messages, posting suggestive photos online, and engaging in serious self-harm by "cutting herself." Despite these disturbing signs, mother made no effort to explore with S.A. the root cause.

Third, after learning about the abuse in mid-2020, mother did not rally to support her daughter. Instead, she blamed S.A. for the family's problems, telling the aunt the dependency case "was her fault," saying S.A. "shouldn't have said anything," and that S.A. was the reason the juvenile court "took away the girls." Indeed, mother remained emotionally and financially dependent on father, describing him to DCFS as a "great father," "great provider," and "great partner."

Fourth, mother's contention that she lacked "first-hand, compelling evidence [that father] sexually abused" S.A. is beside the point. The assertion of juvenile court jurisdiction due to a parent's failure to protect does not depend on the parent having first-hand knowledge that a child has suffered sexual abuse. It is sufficient that

14

the parent "reasonably should have known that the child was in danger of sexual abuse." (§ 300, subd. (d).) Viewing the evidence in the light most favorable to the juvenile court's findings and indulging all legitimate and reasonable inferences to uphold the challenged ruling, there is sufficient evidence to conclude that mother reasonably should have known that S.A. had been abused, and should have known there was a risk of similar abuse to her three younger daughters.

Fifth, we reject mother's assertion that her three younger children were "dissimilarly situated from [their older half-sibling S.A.] and did not face a commensurate risk of abuse." The severity of abuse father inflicted on S.A. in the same home in which all of the children resided with both parents suggested a serious risk of sexual abuse to the other children. (*I.J., supra*, 56 Cal.4th at p. 778 ["the more severe the type of sibling abuse, the lower the required probability of the [child at issue] experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect under section 300. . . . [A]s the abuse becomes more serious, it becomes more necessary to protect the child from even a relatively low probability of that abuse"]; see *ibid.* ["the violation of trust shown by sexually abusing one child while the other children were living in the same home and could easily have learned of or even interrupted the abuse" supports a finding of substantial risk of abuse as to all children in the home].) Further, the likelihood that mother could not protect the younger girls from that abuse was exacerbated by the obliviousness caused by mother's abuse of cocaine, methamphetamine and alcohol. (See e.g., *In re Alexzander C.* (2017) 18 Cal.App.5th 438,

15

442–443 [methamphetamine is an inherently dangerous drug, and those under its influence cannot be trusted to safely and appropriately care for a child], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)

In short, substantial evidence supports the jurisdictional findings under section 300, subdivisions (b)(1), (d) and (j) that mother's failure to protect S.A. from father's sexual abuse placed the three youngest girls at substantial risk of suffering serious physical harm and/or sexual abuse.

II.     *Removal Order*

Mother contends the juvenile court's disposition orders removing the three youngest children from her custody are not supported by substantial evidence.  We conclude that mother has forfeited this argument, and that if considered on its merits, the assertion fails.

The juvenile court asked mother's counsel what mother's "position [was] regarding disposition as to the [three] younger children."  In response and in mother's presence, mother's counsel affirmatively stated that mother was "going to be *submitting the issue of removal to the court*."  (Italics added.)  Mother concedes that "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so they may be corrected.  [Citation.]  [¶]  Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th

16

1287, 1293, fn. omitted (*S.B.*), superseded by statute on other ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 961–962; *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345 ["the forfeiture doctrine applies in dependency cases and the failure to object to a disposition order on a specific ground generally forfeits a parent's right to pursue that issue on appeal"]; accord, *In re Alayah J.* (2017) 9 Cal.App.5th 469, 479.)

"[A]pplication of the forfeiture rule is not automatic." (*S.B., supra*, 32 Cal.4th at p. 1293.) However, an "appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. [Citations.] Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be exercised with special care in such matters. 'Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.' [Citation.] Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*Ibid.*)

Here, mother did not object to removal of the children, and she does not raise an important legal challenge to that ruling. We therefore conclude that she has forfeited her right to challenge the disposition order. In any event, even if we assume mother's claim of error was not forfeited, she has failed to demonstrate that the record lacks substantial evidence to support the removal order.

When fashioning a dispositional order, the juvenile court may make "all reasonable orders for the care, supervision, custody, conduct,

17

maintenance, and support of the child." (§ 362, subd. (a).) We have already discussed the evidence supporting the findings under section 300, subdivisions (b)(1), (d), and (j) that mother's failure to protect S.A from sexual abuse by father created a serious risk of abuse to the younger daughters. Mother does not contest the jurisdictional findings that her three youngest children were at substantial risk of harm based on the parents' domestic violence and her own substance abuse. Given the gravity of the bases for jurisdiction and the magnitude of the danger to the children, it is apparent that substantial evidence supports the court's order removing the three younger daughters from mother's custody and ordering reunification services.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

18