Filed 10/15/13  In re D.K. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.K., a Person Coming Under the Juvenile Court Law. | B247587 (Los Angeles County Super. Ct. No. CK96400) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff, Respondent, and Cross-Appellant,<br><br>        v.<br><br>LAURA K.,<br><br>        Defendant, Appellant, and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Donna Levin, Referee.  Affirmed in part and reversed in part.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant, Appellant, and Respondent.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jacklyn K. Louie, for Plaintiff, Respondent, and Cross-Appellant.

## INTRODUCTION

Laura K. (mother), has two daughters, 16-year-old D.K. and four-year-old A.H., and a son, three-year-old W.H. Walter H. (father) is the biological father of A.H. and W.H.[1] The juvenile court sustained a Welfare and Institutions Code section 300[2] petition as to D.K. and A.H., declaring them to be dependents of the juvenile court, and dismissed the section 300 petition as to W.H. On appeal, mother contends that the juvenile court's jurisdictional findings and disposition orders must be reversed because the Los Angeles County Department of Children and Family Services (Department or DCFS) failed to comply with the provisions of the Indian Child Welfare Act (ICWA or Act) (25 U.S.C. § 1901, et seq.). The Department cross-appeals from the juvenile court's order dismissing the section 300 petition as to W.H. We affirm the jurisdictional findings and disposition orders as to D.K. because father did not have a parental relationship to D.K., biological or otherwise, that triggered the ICWA notice provision, and mother does not contend that there was ICWA notice error with respect to mother's claim of Indian heritage. Because the Department did not comply with the ICWA's notice requirements as to A.H., we conditionally reverse the jurisdictional findings and disposition orders as to A.H., and remand this case with directions to the juvenile court to ensure full compliance with the ICWA with respect to A.H. We further reverse the juvenile court's order dismissing the petition as to W.H. Because we hold that the juvenile court should have assumed jurisdiction over W.H., the juvenile court is to make an ICWA determination as to W.H. on remand.

---

[1] Although the Department's reports refer to father as D.K.'s "stepfather," mother and father were not married. Mother reported that D.K.'s biological father, S.W., is deceased. Mother and father had a third child, Daniel, who was in a legal guardianship of a paternal aunt. As of November 2012, mother reported that she was five months pregnant.

[2] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

## PROCEDURAL AND FACTUAL BACKGROUND

In November 2012, the Department filed a petition under section 300, subdivision (b) (failure to protect) as to D.K., A.H., and W.H.; under subdivision (d) (sexual abuse) as to D.K.; and under subdivision (j) (abuse of sibling) as to A.H. and W.H. alleging that father had sexually abused D.K. from the time she was 13 years old, including raping her and fondling her vagina. Mother allegedly knew of father's sexual abuse, but failed to protect D.K., allowing father to reside in the home and thereby giving him unlimited access to D.K. The petition alleged that father's ongoing sexual abuse of D.K. and mother's failure to protect D.K. endangered the child's physical health and safety and placed her and her siblings at risk of physical harm, damage, danger, sexual abuse, and failure to protect.

According to the Detention Report, father began sexually abusing D.K. in March 2010, and had raped her five or six times, most recently in June 2012. D.K. told her probation officer of father's sexual abuse.[3] D.K. was taken to a Los Angeles County Sheriff's station where she was interviewed. A social worker picked up D.K. from the Sheriff's station. D.K. told the social worker that she tried to tell mother about the sexual abuse, but mother did not believe her. The social worker asked D.K. about any sexual abuse of her siblings. D.K. said that father did not touch "his children"—apparently referring to A.H.'s and W.H.'s relationship to father as his biological children. D.K. stated she had "no concerns" with her younger siblings.

Mother and father denied the allegations of sexual abuse. Mother said that she believed that D.K. made the allegations because she had been kicked out of school and was afraid of being punished. Mother reported that D.K. "runs away from home, smokes marijuana and drinks alcohol." According to mother, D.K. also was sexually active with

---

[3]     D.K. reported that mother had placed her on "summary probation . . . due to her behaviors." The Jurisdiction/Disposition Report stated that mother attempted to place D.K. on informal probation to address her behavior, but D.K.'s report of father's sexual abuse "changed the course of mother's request."

3

no regard for her health. Mother took D.K. to the Probation Department in an effort to obtain help with D.K.'s behavior.

The social worker spoke with D.K.'s maternal great aunt, T.P., with whom D.K. had been placed. T.P. stated that she resided with the family for a short time in 2010, and shared a bedroom with D.K. One day, T.P. arrived home at 1:00 a.m. and D.K. was not in her bedroom. T.P. looked for D.K. outside. As T.P. approached the apartment complex's carport, father quickly got out of a car. D.K. also got out of the car. Father said that he was only talking to D.K. about her behavior. D.K. told T.P. that nothing inappropriate had happened. T.P. reported the matter on the "child protection hotline and filed a report about the incident." T.P. had "no concerns" about A.H. and W.H., stating that father "likes teenage girls."

Father and mother filled out Parental Notification of Indian Status forms. Father indicated that he had Indian heritage in the Chickasaw and Choctaw tribes. Mother indicated that she had ancestry in the Blackfoot tribe. At the detention hearing, father stated that his grandfather was a registered member of the Choctaw Indian tribe and lived on a reservation. The juvenile court ordered the Department to investigate father's Chickasaw and Choctaw heritage, but made no such order as to mother's claim of Indian heritage.

The juvenile court found the Department presented a prima facie case as to D.K. under section 300, subdivisions (b) and (d), and as to A.H. and W.H. under section 300, subdivisions (b) and (j). The juvenile court removed D.K. from mother's custody, and A.H. and W.H. from mother's and father's custody. The children were placed with T.P.

The Jurisdiction/Disposition Report stated that a social worker interviewed father concerning his claim of Indian heritage. Father believed that his grandfather, W.R., Sr., was affiliated with the Chickasaw and Choctaw Nations. He did not know his grandfather's date or place of birth, date of death, or Bureau of Indian Affairs registration number, but it appears that father reported that his grandfather died in Kansas City, Missouri. Father told the social worker that he would contact his relatives in Kansas City in an effort to obtain additional information, but had not provided it when the report was

4

prepared. According to the report, father denied being registered with the Bureau of Indian Affairs or attending school or living on a reservation.

Apparently referring to the carport incident that T.P. related to the social worker, D.K. stated that some time in 2010, when she was about 12 or 13 years old, father sexually abused her for the first time. According to D.K., father entered her bedroom and asked her to follow him. D.K. followed father out of the home and to the carport where she got into a car with father. Three of father's adult male cousins were in the car. As D.K. sat in the car, father placed his hands under D.K.'s pants and touched her vagina. T.P. discovered father and D.K. after they got out of the car, and T.P. reported the matter to law enforcement and the Department. In the course of the ensuing investigation, D.K. denied the sexual abuse because father had told her that if she reported it, her younger siblings would be removed from the home and mother.

D.K. said that father requested that she ask her best friend, 14-year-old C.R., if she wanted to have sexual intercourse with him. D.K. declined. C.R. later told D.K. that father had called her and asked her if she was interested in having sexual intercourse with him. D.K. told mother that father was sexually abusing her and that he wanted to have sexual intercourse with C.R.

At the outset of the adjudication hearing, the Department asked the juvenile court if it would be making ICWA findings. The juvenile court ruled, "At this time, the court has no reason to know, based on the information given by [father], that his—that the children were to come under I.C.W.A. The court has no reason to know that this is an I.C.W.A. case."

D.K. testified at the adjudication hearing that father had sexually abused her beginning in 2010, including an occasion when father sexually abused her in a car, and that she told her mother. D.K.'s testimony about the dates she suffered father's sexual abuse varied at times from the dates in the Department's reports. Father testified that he did not live with mother in March 2010, and did not move in with her until June 2010.

With amendments, the juvenile court sustained the petition as to D.K. and A.H. and dismissed the petition as to W.H.[4] The juvenile court declared D.K. to be a dependent of the court pursuant to subdivisions (b) and (d) of section 300, and A.H. a dependent of the court pursuant to subdivision (j) of section 300. In its rulings as to A.H. and W.H,, the juvenile court stated, "I have also taken [A.H.] and [W.H.] out of (b)(1) and (d)(1). And as to (j)(1), I am only leaving [A.H.] in. She's a girl. I think there is a risk when there's another child, girl child in the house. She's going to get older. She's only a baby right now. She's only three years old, I believe. But she will get older and will need protection, and so I left her in. [¶] I think [W.H.] is differently situated. I don't think there's any risk as to [W.H.]. As far as sexual abuse. I am dismissing [W.H.] from the petition." The juvenile court removed D.K. from mother; it removed A.H. from father and placed her with mother.

## DISCUSSION

### I.  ICWA Notice

Mother contends that the juvenile court's jurisdictional findings and disposition orders must be reversed because the Department did not comply with the ICWA's notice provisions with respect to father's claim of Indian heritage. The Department concedes that the record fails to show ICWA compliance and does not oppose remanding the matter to effectuate proper notice, but argues we should remand for ICWA notice compliance without reversing the jurisdictional findings and disposition orders.

"In 1978, Congress passed the Act, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of

---

[4]     The juvenile court's amendments are not entirely clear. It appears that the court made certain interlineations to the section 300 petition, removing from the subdivision (b), (d), and (j) allegations the claim that D.K. was afraid of father; removing from the subdivision (b) allegation the claim that father's sexual abuse of D.K. and mother's failure to protect her daughter placed D.K., A.H., and W.H. at risk of physical harm, damage, danger, sexual abuse, and failure to protect; removing A.H. and W.H. from the substantive claims in the subdivision (d) allegation; and removing W.H. from the substantive claims in the subdivision (j) allegation.

6

Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.'" (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 734, quoting 25 U.S.C. § 1902.) The Act "sets forth the manner in which a tribe may obtain jurisdiction over proceedings involving the custody of an Indian child, and the manner in which a tribe may intervene in state court proceedings involving child custody. When the dependency court has reason to believe a child is an Indian child within the meaning of the Act, notice on a prescribed form must be given to the proper tribe or to the Bureau of Indian Affairs, and the notice must be sent by registered mail, return receipt requested. [Citations.]" (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.)

"'The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256]; Cal. Rules of Court, rule 5.481(a)(5)(A); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 258 [126 Cal.Rptr.2d 639] [providing exhaustive analysis of the issue and concluding the 'minimal showing' required to trigger notice under the ICWA is merely evidence 'suggest[ing]' the minor 'may' be an Indian].) 'Given the interests protected by the [ICWA], the recommendations of the [federal] guidelines, and the requirements of our court rules, the bar is indeed very low to trigger ICWA notice.' (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 [129 Cal.Rptr.2d 15] [finding father's suggestion that child 'might' be an Indian child because paternal great-grandparents had unspecified Native American ancestry was enough to trigger notice].)" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)

The Department properly concedes that the record does not reflect compliance with the ICWA notice provisions. As set forth above, father gave specific information indicating that A.H. and W.H. had Indian heritage and identifying information about his grandfather that the Department could use to determine the children's Indian status. Father stated that his grandfather was affiliated with the Chickasaw and Choctaw Indian

7

tribes, was a registered member of the Choctaw tribe, and lived on a reservation. Father provided his grandfather's name and place of death. Because the Department did not comply with the ICWA's notice provisions, we conditionally reverse the jurisdictional findings and disposition orders as to A.H. and remand this case with directions to the juvenile court to ensure full compliance with the ICWA. Because we reverse the order of dismissal as to W.H., no conditional order is required as to W.H. but on remand, the juvenile court should ensure full compliance with the ICWA as to W.H.

As to D.K., we affirm the jurisdictional findings and disposition orders. Mother's appeal from the jurisdictional findings and disposition orders is based on the Department's failure to comply with the ICWA's notice provisions with respect to father's claim of Indian heritage—mother does not contend that there was ICWA notice error with respect to mother's claim of Indian heritage. Father, however, has no parental relationship to D.K. whatsoever. Father is not D.K.'s biological father, he is not D.K.'s adoptive father, and he is not D.K.'s stepfather—effectively, father is mother's live-in boyfriend. (See *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 [IWCA notice requirement is not triggered until biological parentage is established]; *In re B.R.* (2009) 176 Cal.App.4th 773, 783-785 [rejecting required demonstration of biological connection to an Indian tribe and holding that ICWA notice provisions were triggered by a claim that a biological father's adoptive father had Indian ancestry].) Absent any parental relationship between D.K. and father, the Department was not required to comply with the ICWA notice provisions based on father's claim of Indian heritage.

## II.    Jurisdiction of W.H.

The Department contends that substantial evidence does not support the juvenile court's order dismissing the section 300 petition as to W.H. The juvenile court erred.

### A.    *Standard of Review*

"A juvenile court's jurisdictional findings are reviewed for substantial evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411].) Generally,

8

'[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [32 Cal.Rptr.3d 526].) "However, substantial evidence is not synonymous with *any* evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations].' [Citation.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*Id.* at pp. 1393-1394.)' (*In re David M., supra,* 134 Cal.App.4th at p. 828.) DCFS has 'the burden to prove the "jurisdictional facts by a preponderance of the evidence."' (*In re Drake M.* (2012) 211 Cal.App.4th 754, 768 [149 Cal.Rptr.3d 875]; see *In re D.C.* (2011) 195 Cal.App.4th 1010, 1014 [124 Cal.Rptr.3d 795].)" (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966-967 (*Los Angeles County*).)

"A court has said that when the trier of fact has concluded that the party with the burden of proof did not carry the burden and that party appeals, 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 [103 Cal.Rptr.3d 538].) 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation].' (*Id.* at p. 1528.) Nevertheless, courts in this situation have still employed the test of whether there is substantial evidence that supports the determination of the trier of fact. (See *In re Roberto C.* (2012) 209

9

Cal.App.4th 1241, 1254 [147 Cal.Rptr.3d 505].)" (*Los Angeles County, supra,* 215 Cal.App.4th at p. 967.) The juvenile court erred, regardless of the standard.

### B. There Was Jurisdiction

As we said in *Los Angeles County, supra,* 215 Cal.App.4th at pages 967-968, "Jurisdiction over a child under section 300 may be based on there being 'a substantial risk that a child will suffer . . . serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child' (subd. (b)); if 'there is a substantial risk that the child will be sexually abused, as defined in section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household' (subd. (d)); or if the 'child's sibling has been abused or neglected, as defined in subdivisions [(b) or (d)], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions' (subd. (j))." (Fn. omitted.)

The juvenile court found jurisdiction over D.K. under section 300, subdivisions (b) and (d) based on father's sexual abuse of D.K., it found jurisdiction over A.H. under subdivision (j) because father sexually abused her sibling—D.K., and it dismissed the petition as to W.H. As set forth above, in finding jurisdiction as to A.H. but not as to W.H., the juvenile court stated, "I have also taken [A.H.] and [W.H.] out of (b)(1) and (d)(1). And as to (j)(1), I am only leaving [A.H.] in. She's a girl. I think there is a risk when there's another child, girl child in the house. She's going to get older. She's only a baby right now. She's only three years old, I believe. But she will get older and will need protection, and so I left her in. [¶] I think [W.H.] is differently situated. I don't think there's any risk as to [W.H.]. As far as sexual abuse. I am dismissing [W.H.] from the petition." As reflected in the juvenile court's ruling, the only meaningful distinction between A.H. and W.H. in assessing the potential for harm from father's sexual abuse was their different sexes—A.H. was a very young girl and W.H. was a very young boy; both were father's biological children. When considering jurisdiction of a child based on the potential for harm from sexual abuse, sex is not, in this case, a distinguishing circumstance that supports a finding of jurisdiction over one child but not over another.

10

In *Los Angeles County, supra,* 215 Cal.App.4th 962, in holding that the juvenile court erred in dismissing a section 300 petition because the evidence established that the child was at risk of sexual abuse by the father, we observed, "Cases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling. (*In re I.J.* (2013) 56 Cal.4th 766; *In re Andy G.* (2010) 183 Cal.App.4th 1405 [107 Cal.Rptr.3d 923] [two-year-old boy at risk because father sexually abused the boy's 12-year-old and 14-year-old half sisters]; *In re P.A.* (2006) 144 Cal.App.4th 1339 [51 Cal.Rptr.3d 448] [sexual abuse of daughter could be found to pose risk of sexual abuse to younger brothers]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 91 [115 Cal.Rptr.2d 18] [rape of 13-year-old daughter reasonably could be found 'to be so sexually aberrant' that both male and female children siblings of the victim are at substantial risk of sexual abuse]; *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [101 Cal.Rptr.2d 760] [sexual abuse of 13-year-old daughter supports finding of risk to 9-year-old daughter]; *In re Joshua J.* (1995) 39 Cal.App.4th 984 [46 Cal.Rptr.2d 491] [father who sexually abused a six-month-old boy poses risk of sexual abuse to newborn son]; *In re Dorothy I.* (1984) 162 Cal.App.3d 1154 [209 Cal.Rptr. 5] [jurisdiction based on abuse of half sister 15 years earlier]; see also *In re Marianne R.* (1980) 113 Cal.App.3d 423 [169 Cal.Rptr. 848] [in dependency proceeding concerning daughter, evidence of sexual abuse of stepdaughter by father admissible].)" (*Id.* at p. 968, fn. omitted.)

We recognize that the Supreme Court, in upholding an assertion of jurisdiction in *In re I.J., supra,* 56 Cal.4th at page 780, stated that it was "not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused." Generally, when as in this case, however, two children are similarly situated in terms of their risk of harm from the occurrence of sexual abuse, a juvenile court errs when it finds jurisdiction as to one of the children but not as to the other based solely on sex.

## DISPOSITION

The jurisdictional findings and disposition orders are affirmed as to D.K. and conditionally reversed as to A.H.  The order dismissing the petition as to W.H. also is reversed.  The matter is remanded to the juvenile court for the limited purpose of ensuring compliance with the ICWA. The Department is to conduct an inquiry into whether A.H. and W.H. have Indian heritage and to further comply with the ICWA as appropriate.  If after such inquiry, the juvenile court determines that A.H. and W.H. do not have Native American ancestry, then the juvenile court shall reinstate the jurisdictional findings and disposition orders as to A.H., assume jurisdiction over W.H., and make any disposition orders as to W.H. as may be appropriate.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


KUMAR, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.