Filed 2/9/15  In re C.R. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | B255670 |
| | (L.A.S.C. No. DK02932) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| CH.R., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Rebecca O. Eichinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant, the father of minor C.R., appeals from an order of the juvenile court that declared C.R. a dependent of the court under Welfare and Institutions Code section 300,[1] subdivisions (d) and (j) based on appellant's sexual abuse of C.R.'s 13-year-old half-sister R.L. Appellant argues that the juvenile court's jurisdictional findings and disposition orders must be reversed because there was insufficient evidence that appellant sexually abused R.L., and insufficient evidence that C.R. was at substantial risk of abuse under the circumstances, including the differences in age and gender between R.L. and C.R. For the reasons articulated below, we reject appellant's arguments and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### Prior Involvement of the Department of Children and Family Services With the Family.

At the time the minor subject to the petition, C.R. (then age three), C.R.'s half-sister R.L. (age 13), and half-brother K.D. (age 10), came to the attention of the Department of Children and Family Services (Department), they lived with their mother Katherine R.[2] (Mother).[3]

Mother and appellant were married in 2007. Mother filed for dissolution of the marriage in 2012, and their divorce became final in January 2013. Mother and appellant shared legal custody of C.R. and Mother had physical custody of him. Although the parents were divorced and lived apart, Mother and appellant continued to have a sexual relationship until December 2013.

In March 2013, Mother began to suspect that appellant was having a romantic relationship with another person. She soon learned that her 13-year-old daughter, R.L., was the person involved with appellant. In May of 2013, Mother discovered cell phone

---

[1]   All further code references, unless indicated otherwise, are to the Welfare and Institutions Code.

[2]   Mother is not a party to this appeal.

[3]   All three children have different fathers. Neither R.L. nor K.D, nor their respective fathers are subject of the petition, or parties to this appeal.

text messages between appellant and R.L. According to Mother, in a text from R.L. to appellant, R.L. stated that she was "in love" with him. In a text message from appellant to R.L., appellant asked R.L. to send him a picture and stated that the picture had "turned him on." Mother reported that "there was kissing and touching" and possibly sexual relations between R.L. and appellant. Mother confronted appellant, who, according to Mother, admitted to being in love with R.L. R.L. admitted to being in a "boyfriend and girlfriend relationship" with appellant.

Mother decided to send R.L. to stay with relatives in the Philippines during the summer of 2013 to separate her from appellant. When R.L. returned, Mother discovered that R.L. and appellant had been in communication with each other via the Internet.

After R.L. returned to school in August 2013, Mother saw appellant at R.L.'s school. Mother decided to report the suspected relationship between R.L. and appellant to the school. Thereafter, school authorities contacted the Department.

On August 20, 2013, the Department received a sexual abuse referral alleging that appellant and minor R.L. were having an "affair." The Department interviewed R.L. who denied the relationship. R.L. also refused to submit to a medical examination. Ultimately, the investigation was closed as "inconclusive." However, Mother agreed to participate in a voluntary family maintenance (VFM) services contract. A Team Decision Making meeting (TDM) was held on September 9, 2013, and a safety plan was created. Mother and R.L. attended the TDM. The safety plan detailed the Department would provide VFM services.

### Incident That Resulted in the Filing of the Instant Petition.

In December 2013, the Department received another referral alleging sexual abuse by appellant of R.L. On Friday, December 20, 2013, Mother had left the children in the care of the maternal grandmother (MGM) for the evening. Mother told R.L. that she would not be returning until about 2:00 a.m. the next morning. The referral alleged that later Friday night around midnight, Mother returned home from a holiday party and walked in on appellant and R.L. having "sex." Mother tried to grab appellant and called out for MGM to call police. Appellant fled; he was gone before police arrived.

Mother filed a police report. R.L. refused a forensic evaluation. When questioned by police, R.L. denied that appellant had been in the family home that evening. She denied that she and appellant had any "sexual contact" or that she had any type of sexual relationship with appellant. She stated that Mother was fabricating the story because she was upset about her divorce from appellant. R.L. told officers that she had not seen appellant in months. Thereafter, R. L. refused to speak any further to officers. According to Mother, R.L. threatened self-harm.[4] Mother reported that R.L. had a prior episode of self-harm; R.L. had cut her wrists while in the Philippines in the summer of 2013.

Mother reported to the Department that when she returned home from a Christmas party around midnight, she found R.L. with appellant, and that appellant was "half-naked" when she discovered them. Mother stated everyone else in the family was sleeping and R.L. must have allowed appellant in the home. Mother did not permit him inside the home. Mother had reported that when she came home she witnessed appellant kneeling down on the floor in the living room near the couch and saw R.L. lying on the floor. Appellant was partially clothed (wearing only boxer shorts). When he fled the scene, he left behind a pair of shorts and sandals. When Mother observed R.L., R.L. was pulling up her pajama pants and there was a pair of underwear on the floor. Mother reported that R.L. threw appellant his car keys as he exited. MGM reported that when she heard Mother calling out to call police, she came downstairs and saw R.L. throwing appellant's car keys to him.

On January 6, 2014, the Department filed a section 300 petition under subdivisions (b) and (d), alleging that appellant's sexual abuse of 13-year-old R.L. placed C.R.[5] at risk

---

[4]  Mother feared that R.L. would self-harm if the police or the Department became involved with the family. Mother reported to a social worker that R.L. was "in love" with appellant and would commit suicide if Mother reported appellant to the authorities.

[5]  The Department provided informal supervision to C.R.'s half-siblings, R.L. and K.L., and did not file a petition regarding them.

of harm.  At the detention hearing, C.R. was detained from appellant and released to Mother.

**Jurisdiction/Disposition Proceedings.**

The jurisdiction/disposition report indicates that when R.L was interviewed, she admitted that appellant was present in the apartment on the evening of December 20 and that she had allowed appellant to come inside the family home.  R.L. reported that appellant asked about her family and gave her money for Christmas presents.  R.L. said that other family members, including her grandmother and two brothers were in the home at the time and that they were upstairs sleeping.

The Department also interviewed K.D.  He reported that on the night of December 20, 2013, he heard a commotion downstairs in the apartment and discovered that appellant was in the home.  K.D. reported that he normally slept downstairs, but on that night R.L. had told him to sleep upstairs.   When K.D. tried to come downstairs around 11:00 p.m. to get milk for C.R., R.L. stopped K.D. from doing so.  R.L. did not want K.D. downstairs; R.L. got the milk for K.D. to take to C.R.

When interviewed, appellant denied the allegations.  He accused Mother of retaliating against him because he did not want to reconcile with her.  He admitted visiting the home on December 20, 2013, and reported he went to the home to see the children.  Appellant knew Mother would not be home because she had mentioned she planned to go to a work party.   He said that he arrived at the home around 11:00 p.m.  Appellant said he panicked when Mother arrived.  Appellant claimed that Mother was under the influence of alcohol at the time.

At the adjudication hearing on February 3, 2014, appellant's trial counsel asked that the petition be dismissed pursuant to section 350, subdivision (c).  Minor's counsel joined in appellant's request.  The court denied the motion, finding sufficient evidence to proceed.  The court noted that there was "enough evidence to show father's state of mind when he ran and left the residence in his underwear, when he was found to be pulling up his underwear, the child was pulling up her underwear, that there appears to be a history of relationship between father and the child discussed regarding text messages."

5

Mother testified that on the night of Friday, December 20, 2013 near midnight, she returned home unannounced from a Christmas party. Mother saw appellant kneeling down in his boxer shorts next to R.L. and R.L. was pulling up her pajamas. Mother admitted that she did not witness them having sex. Mother testified that she believed a romantic relationship between appellant and R.L. existed before that night. Mother described the text messages she had discovered which disclosed the relationship. Mother testified that she continued her sexual relationship with appellant until the night of the Christmas party because she was in denial.

R.L. also testified at the hearing. She stated that she initially lied when she claimed that appellant was not inside the apartment on December 20. She said she was scared; she knew that appellant was not supposed to be in the apartment. R.L. denied, however, that she and appellant had a sexual relationship.

The Department argued that R.L.'s testimony did not appear credible; the Department pointed out that R.L. had initially lied to the police. K.D. stated R.L. asked him to sleep upstairs the night of the incident, although he usually slept downstairs. The Department argued that the facts, including appellant being in his boxer shorts with a minor, raised serious concerns. Minor's counsel argued that the Department did not meet its burden. Minor's counsel also argued that C.R. was differently situated from R.L., because C.R. was appellant's three-year-old biological son.

Appellant's counsel argued that there was insufficient evidence to sustain the allegation in the petition as pled because there was no evidence that a sexual act occurred and thus no evidence that R.L. was "sexually abused" as alleged in the petition. Appellant's counsel also argued that "I guess the court can find there's evidence of a risk of sexual abuse if you find mom credible," but that Mother's story, in appellant's counsel's view was not credible, because she continued to engage in sexual relations with appellant after reportedly discovering text messages between R.L. and appellant indicating an "affair." Appellant's counsel argued that "no mentally healthy woman would continue a relationship with the child's father if they really believed" that the father was in love with her daughter. Appellant's counsel also argued that even if

6

appellant and R.L. were having a love affair, "there's not one iota of evidence that says [father] look[ed] at a young boy inappropriately or look[ed] at [C.R.] inappropriately."

The juvenile court sustained the section 300, subdivision (d) count and added a count pursuant to section 300, subdivision (j). The juvenile court dismissed the section 300, subdivision (b) allegation. The juvenile court commented that "mother clearly was inappropriate to continue her relationship with father in the manner in which she's described." The juvenile court found that R.L. "was not credible because it's pretty clear that she denied the act itself, that is, the father being there on the night." The court further stated, "I think it also appears that this was something that was planned. As indicated, R.L. had her brother [K.D.] go upstairs at an inappropriate time as when she expected father to be there." The juvenile court stated that appellant did not deny that he was in the home inappropriately, and said appellant would not have "r[u]n in the manner that he did, still partially clothed" if he was not there "inappropriately." The juvenile court could not "say that there was sexual intercourse or anything specifically between father and the child, but it appears that's where they were headed, and . . . the evidence supports the fact that they were disrobing themselves, were in partial disrobing when mother arrived, strongly infers that they were about to engage in some sexual activity."

The sustained counts found true: section 300, subdivisions (d) and (j): "On 12-21-13, the child [C.R.]'s father . . . sexually abused the child's 13 year old sibling [R.L.] . . . by engaging in sexual relations with the child's 13 year-old sibling. Such sexual abuse of the child's sibling on the part of the father endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and sexual abuse."

The juvenile court proceeded to disposition. The juvenile court removed C.R. from appellant's custody, finding a significant risk of detriment. The juvenile court commented that "this is a serious offense, a lot of crimes were committed, including a burglary with intent to commit a felony, which is the sexual abuse of a child. I think it's a lot more serious than I think father thinks it is." The court also granted reunification services for appellant.

Appellant timely filed this appeal.

## *DISCUSSION*

Appellant argues that sufficient evidence did not support the juvenile dependency court's jurisdictional finding that he sexually abused R.L. and his abuse of R.L. placed C.R. at risk of harm. Accordingly, appellant argues that the court's jurisdiction findings and dispositional orders[6] must be reversed.

We review the jurisdictional findings for "any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [jurisdictional findings]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 [dispositional orders].) "Under the substantial evidence rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748-749, fn. 6.) Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its decisions for those of the trier of fact. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Under this standard, we review the evidentiary record in the light most favorable to the judgment. (*Ibid*.)

Here the juvenile court assumed jurisdiction under section 300, subdivisions (d)[7] and (j). Although there is no evidence in the record that appellant physically or sexually abused or neglected C.R., section 300 does not require that a child actually be abused or

---

[6] Appellant does not assert any specific separate challenge to the dispositional order.

[7] Section 300 reads, in pertinent part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subd. (d).)

neglected before the juvenile court can assume jurisdiction. Subdivisions (d) and (j) require only a "substantial risk" that the child will be abused or neglected. The declared purpose of these provisions "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) Indeed, "[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

Specifically subdivision (j) of section 300 applies if: (1) the child's sibling has been abused or neglected as defined in specified other subdivisions ((a), (b), (d), (e) or (i)); and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions. (§ 300, subd. (j).) On appeal, the dependency court's findings as to both requirements of subdivision (j) are at issue.

**A.      Evidence That R.L. Was Abused Or Neglected As Defined In Subdivisions (a), (b), (d), (e), Or (i) Of Section 300.**

The petition alleged appellant "sexually abused" C.R.'s half-sister, R.L., as defined in subdivision (d). Appellant argues the allegation in the petition – he "sexually abused the child's 13 year old sibling [R.L.] . . . by engaging in sexual relations with the child's 13 year old sibling" – cannot be sustained because there is no evidence that R.L. and appellant had sexual intercourse.

Appellant is correct there was no direct evidence that appellant and R.L. had engaged in sexual relations on December 20, 2013, or before. Consequently, the factual allegation in the petition, that appellant "sexually abused" R.L. by "engaging in sexual relations" with her may not have sufficient support in the evidence presented to the juvenile court.[8] As described elsewhere, however, subdivision (d) may apply based on

_____

[8]      Notwithstanding this observation, we conclude that the facial inaccuracy of the petition, standing alone, does not warrant reversal of the jurisdictional orders in this case. "The purpose of the petition is to give a parent adequate notice of the allegations against

9

acts of sexual abuse *or* a substantial risk of sexual abuse. (§ 300, subd. (d).) Accordingly, the fact that R.L. and appellant were not caught in an act of sexual intercourse does not foreclose the application of subdivision (d). Indeed, in sustaining the petition, the court acknowledged that "I can't say that there was sexual intercourse or anything specifically between father and the child, but it appears that's where they were headed . . . ."

In our view, sufficient evidence in the record supports a finding that R.L. was at risk of sexual abuse as defined by subdivision (d) of section 300. Based on evidence in the record of appellant's interaction with R.L. prior to December 20, 2013, it appears that appellant and R.L. were engaged in some kind of romantic relationship. The testimony

---

him or her." (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 83.) "Notice of the specific facts upon which removal of a child from parental custody is predicated is fundamental to due process" and "necessary to enable the parties to properly meet the charges." (*In re Jeremy C.* (1980) 109 Cal.App.3d 384, 397; *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1036-1037.) Nonetheless, "'"[i]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant." [Citation.]' ([*In re*] *N.M.* [(2011) 197 Cal.App.4th 159,] 166, fn. omitted.) 'The only exception occurs when a parent claims a petition fails to provide actual notice of the factual allegations. Unless the alleged factual deficiencies result in a miscarriage of justice, the reversal of a jurisdictional order supported by substantial evidence is unwarranted.' (*In re Javier G.* (2006) 137 Cal.App.4th 453, 458–459.)" (*In re John M.* (2012) 212 Cal.App.4th 1117, 1123; *In re Athena P.* (2002) 103 Cal.App.4th 617, 626–627.) "[A]fter a hearing on the merits has been held on the petition, the focus must necessarily be on the substance of the allegations found true by the juvenile court, not idiosyncratic particulars of the social worker's precise language. Anything less would allow parents to hold linguistic deficiencies in the petition as a kind of trump card by which they could attack a finding that a child fell within one of the descriptions of section 300, even though that finding was supported by substantial, indeed overwhelming evidence." (*In re Jessica C., supra,* 93 Cal.App.4th at pp. 1037-1038.)

Here, appellant does not claim that he lacked notice of the factual allegations in the petition. In fact, in the dependency court, appellant attacked the facial sufficiency of the allegation in the petition alleging sexual abuse as well as the implied allegation that R.L. was at risk of abuse. He argued that there was no evidence that he had sexual relations with R.L. and that there was no evidence to support a finding that R.L. was at risk of sexual abuse under section 300, subdivision (d). Thus, any inaccuracy in the petition as pled does not warrant reversal.

10

of Mother, which the trial court was entitled to credit, indicated that R.L. and appellant had exchanged inappropriate text messages, and that each of them made statements to Mother confirming their relationship. Prior to December 2013, Mother attempted to separate appellant and R.L. to end the suspected relationship by sending R.L. to live with relatives in the Philippines. However, appellant and R.L. resumed contact when she returned, leading Mother to report the relationship to R.L.'s school. In addition, the circumstances of December 20 and the early morning hours of December 21, 2013, also support the court's finding that appellant and R.L. were about to engage in some sexual activity when Mother interrupted them by coming home earlier than R.L. had expected. The state of undress of both R.L. and appellant when Mother arrived further supports the court's finding, as does R.L.'s intentional conduct of having her 10-year-old brother K.D. sleep upstairs, and refusing to allow him to come downstairs to get some milk for C.R. Likewise, the fact appellant fled the apartment leaving his clothes behind gives rise to the inference of consciousness of guilt. Notwithstanding R.L.'s and appellant's denials, the totality of this evidence is sufficient to support the court's conclusion that R.L. has "been abused or neglected" as defined in subdivision (d). Therefore, we conclude the first requirement of subdivision (j) has been met.

**B. Evidence of Substantial Risk That C.R. Will Be Abused.**

Appellant also challenges the court's finding as to the second requirement of section 300, subdivision (j), namely, that there is a substantial risk C.R. will be abused or neglected as defined in section 300, subdivisions (a), (b), (d), (e), or (i). Appellant argues that given the age and gender differences between R.L. and C.R., there was insufficient evidence that C.R. was at risk under section 300.

"'[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) does not state that its application is limited to the risk that the child will be abused or neglected as defined in the same subdivision that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the

11

child will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.'" (*In re I.J., supra,* 56 Cal.4th at p. 774, quoting *In re Maria R.* (2010) 185 Cal.App.4th 48, 64.) Pursuant to subdivision (j), the court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other facts the court considers probative in determining whether there is a substantial risk to the child. (§ 300, subd. (j).) Accordingly, subdivision (j) allows "'the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions. [¶] The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of any of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance." (*In re I.J., supra,* 56 Cal.4th at p. 774, quoting *In re Maria R., supra,* 185 Cal.App.4th at p. 64.)

Turning specifically to appellant's contention that C.R. was not at risk because he was not similarly situated to his half-sister, we observe that a number of cases have held sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling. (*In re I.J., supra,* 56 Cal.4th 766; *In re Andy G.* (2010) 183 Cal.App.4th 1405 [two-year-old boy at risk because father sexually abused the boy's 12-year-old and 14-year-old half-sisters]; *In re P.A.* (2006) 144 Cal.App.4th 1339 [sexual abuse of daughter could be found to pose risk of sexual abuse to younger brothers]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 91, [rape of 13-year-old daughter reasonably could be found "to be so sexually aberrant" that both male and female children siblings of the victim are at substantial risk of sexual abuse]; *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [sexual abuse of 13-year-old daughter supports finding of risk to 9-year-old daughter]; *In re Joshua J.* (1995) 39

12

Cal.App.4th 984 [father who sexually abused a six-month-old boy poses risk of sexual abuse to newborn son]; *In re Dorothy I.* (1984) 162 Cal.App.3d 1154 [jurisdiction based on abuse of half-sister 15 years earlier]; see also *In re Marianne R.* (1980) 113 Cal.App.3d 423 [in dependency proceeding concerning daughter, evidence of sexual abuse of stepdaughter by father admissible].)

We find particularly instructive here, *In re Andy G., supra*, 183 Cal.App.4th 1405 and *In re Ricky T.* (2013) 214 Cal. App.4th 515, 523. In each of those cases the court of appeal upheld dependency jurisdiction over young male minors – age two and one-half and age three – where the parent abused significantly older sisters, even though both young minors were not actually cognizant of the abuse. In both *In re Andy G.* and *In re Ricky T.*, the appellate courts concluded that the minors were at "risk" of abuse under section 300 because the abuse took place while the minors were in the home and thus were at risk of being exposed to the abuse. (See *In re Andy G, supra,* 183 Cal.App.4th at p. 1414 [holding that the abuse of the sibling while the minor was present "evinces, at best, a total lack of concern for whether Andy might observe [appellant's] aberrant sexual behavior"]; *In re Ricky T., supra,* 214 Cal. App.4th at p. 523 [holding "the juvenile court reasonably could conclude Ricky T. was at risk of being exposed to Juan T.'s sexual abuse of other children in Ricky T.'s presence even if Ricky T. were not at risk of being touched inappropriately by Juan T. Sexual abuse of other children in Ricky T.'s presence would also constitute annoying or molesting Ricky T. within the meaning of [the] Penal Code . . . ."].)

In reviewing the sufficiency of the court's findings as to whether the abuse of R.L. placed C.R. at risk of physical harm, or sexual abuse, we examine the evidence in the record. First, appellant's inappropriate involvement with R.L. took place over a period of time; the potential risk to C.R. did not arise based on a one time event. K.D. reported that there were other times before December 20, 2013 when Mother was away for the evening when R.L. did not allow him to sleep downstairs, which raises an inference that December 20 was not appellant's first late night visit to the home. Second, the circumstances of December 20 (and December 21) in which appellant and R.L. were

13

found together in a state of undress downstairs while C.R. and his brother were upstairs demonstrate appellant's complete disregard for whether R.L. and appellant's conduct might be observed by one of the minors. These circumstances presented a significant risk of exposing C.R. to appellant's sexual abuse of R.L. In our view, that potential for exposure is sufficient to sustain a finding that C.R. was at substantial risk for abuse or neglect as defined in section 300, subdivision (d). (See *In re Ricky T., supra,* 214 Cal.App.4th at p. 523.)

Furthermore, appellant denied all responsibility for the abuse. Without court intervention, it does not appear appellant would address the issues that gave rise to these proceedings. (See *In re Carlos T.* (2009) 174 Cal.App.4th 795, 800, 806 [affirming the exercise of jurisdiction based on substantial risk where although father was incarcerated he denied responsibility for having previously abused both children, the mother denied responsibility for allowing the abuse to occur, and "there [was] every reason to believe that [the] father would resume his sexual abuse of [the minors] without the state intervening to prevent him from obtaining access to them"].)

In view of the foregoing, we conclude that the court properly exercised jurisdiction under section 300, subdivision (j). Given our conclusion that substantial evidence supports jurisdiction under subdivision (j) of section 300, we need not address appellant's further arguments that the evidence does not support a similar finding under subdivision (d). When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. (*In re I.J., supra,* 56 Cal.4th at p. 773, citing, *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.)

14

## *DISPOSITION*

The orders of the juvenile court are affirmed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**