Filed 8/25/25  In re A.G. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | B340551 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Isaiah G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 24PSJP00024A–D) |

APPEAL from orders of the Superior Court of Los Angeles County.  Stacy Wiese, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

————————————————————

## INTRODUCTION

Isaiah G. (Father) appeals the jurisdictional findings that his four children, including two daughters and two sons, were at risk of sexual abuse, while conceding that he sexually abused his eldest daughter when she was four years old. Father abused his daughter 14 years before the jurisdictional hearing after which Rosa L. (Mother) did not allow him to see these four children. Although the respondent argues the appeal is moot, we reach the merits to address potential stigma to Father and because Father faces current legal consequences from the findings. In his reply brief, Father disagrees that the appeal should be dismissed and argues, instead, we should reverse the jurisdictional findings against him. We conclude that substantial evidence supports the juvenile court's findings that all four children faced a current risk of harm because the record reveals that Father sexually abused his two stepsons in addition to sexually abusing his eldest daughter, and Father took no steps to address his pattern of sexually abusing his children during the many years that Mother precluded him from seeing his four children. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Family's background

Father and Mother are the parents of A.G. born in 2006, I.G. born in 2007, Alexis G. born in 2008, and Isaac G. born in 2009. Mother also has two adult sons, Ruben L. and Jacob L., from a previous relationship. Mother and Father married in 2007 and separated in 2010. When the family came to the court's attention, Father was incarcerated in North Dakota on an unrelated domestic violence charge, and he had not seen the children since 2009 or 2010 after the family's involvement with the child protective services in 2008.

## 2. The initiation of dependency proceedings

In March 2024, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of A.G., I.G., Alexis, and Isaac. The petition alleged that Mother placed A.G. and her siblings at risk of physical harm by allowing A.G. to live with nonrelated extended family members who had a history of engaging in violence, and that the same nonrelated extended family members physically assaulted Alexis on one occasion.

At the initial hearing, the court detained A.G. from both parents' custody while detaining I.G., Alexis, and Isaac from only Father's custody. The court allowed I.G., Alexis, and Isaac to remain in Mother's custody on the condition that she drug test the same day. As to Father, the court ordered no visitation until he contacted DCFS.

In late March 2024, DCFS reported that Father was expected to be released from custody in July 2024. Father told DCFS that he "wants to establish a relationship" with the children, acknowledging that he " 'fucked up' " and feels " 'awful they're all the way over there [in California] and [he] can't do anything about it.' " Father reported that he has a history of mental health issues, including "a diagnosis of depression," as well as a "domestic violence history with both the mothers of his children." Father admitted that he was a perpetrator of domestic violence.

On April 3, 2024, DCFS filed a request to detain I.G., Alexis, and Isaac from Mother because Mother failed to drug test and could not be located. On May 14, 2024, Mother was arrested for felony child abduction, and I.G., Alexis, and Isaac were subsequently found with the maternal grandmother in Colorado.

The children were taken into protective custody and placed in foster care.

### 3. The amended petition adds allegations against Father

In May 2024, A.G. disclosed that Father sexually abused her when she was about four years old while the family lived in Colorado. When she was sleeping on a sofa in the living room, Father approached her and asked her "Are you wet?" At the time she did not understand what the question meant, but Father proceeded to pull down her pants and underwear, and licked her vagina. She stated she was scared and confused, and told Mother about the sexual abuse on the same day it happened. Mother later took the four children and left the family home.

Mother reported that she was contacted by the Colorado Department of Human Services Division of Child Welfare about four years ago. That agency told Mother that Father confessed to sexually abusing A.G. when the child was "younger." At that time, A.G. also told Mother that Father sexually abused her. Mother denied knowing that Father sexually abused A.G. before being contacted by the Colorado agency.

In his May 2024 interview, Father denied that he sexually abused the child, claiming he never made "a sexual comment toward A.G. or touched [her] in a sexual manner." He also denied ever telling anyone that he sexually abused A.G.

I.G., Alexis, and Isaac confirmed knowing that Father sexually abused A.G. Alexis and Isaac further reported that Father also sexually abused Ruben and Jacob, Mother's children from a previous relationship, when Ruben and Jacob were young children.

4

A.G., I.G., and Alexis also reported that, their half siblings, Ruben and Jacob, sexually abused all four children.

On May 28, 2024, DCFS filed a first amended petition. The amended petition realleged the same allegations from the original petition and added allegations that Father sexually abused A.G. when she was about four years old. The amended petition also alleged Father's sexual abuse of A.G. endangered I.G., Alexis, and Isaac. The amended petition further alleged that Mother failed to protect all four children from the sexual abuse of their half siblings, Ruben and Jacob. Finally, the amended petition added allegations based on Mother's recent abduction of I.G., Alexis, and Isaac, and her use of methamphetamine and marijuana while the children were under her care.

### 4. Jurisdictional and dispositional hearing

The jurisdiction and disposition report dated May 29, 2024, indicated Father wished to reunify with the children, including having in-person visits with them. A.G., I.G., Alexis, and Isaac told DCFS they wanted no contact with Father. In the same report, I.G., Alexis, and Isaac indicated Father also sexually abused their maternal half siblings, Ruben and Jacob, when their half siblings were young children. While they do not know whether the sexual abuse was reported to law enforcement, Alexis stated, "[F]ather [penetrated] [Jacob's and Ruben's] anuses with his penis."

On July 11, 2024, the juvenile court held the jurisdictional and dispositional hearing. The court sustained allegations based on Father's sexual abuse of A.G., but it struck allegations that Mother failed to protect the children from Father's sexual abuse. The court also sustained allegations based on Mother's issues

5

with substance abuse and her abduction of the children.  In addition, the court sustained allegations that Mother failed to protect A.G., I.G., Alexis, and Isaac from Ruben's and Jacob's sexual abuse.

As to the sexual abuse allegations against Father, the court found A.G.'s statements were credible:  "There is no reason for me to not believe what [A.G.] stated.  She may be off on the dates but not only did [A.G.] state that she was sexually abused by Father but she made some pretty bold statements. [¶] She stated that Father asked her if she was wet.  She didn't understand.  He pulled down her pants and underwear and licked her vagina.  She stated that she told [Mother], and that [Mother] confronted Father. . . . [¶] . . . [I.G.] also stated . . . that he was aware of the sexual abuse by Father against [A.G.].  Alexis stated [A.G.] told her she was sexually abused by Father as well.  It's not like this is the first time the sexual abuse has been coming up.  [A.G.] told everybody in her family that this has occurred. [¶] . . . There is no reason for this court to believe she is not being truthful. . . . I know [Father] denied it, but the court is going to find the allegation true and that evidence is sufficient to sustain [these allegations] . . . ."

The court declared all four children dependents of the court, removed them from their parents' custody, and ordered reunification services for Mother and Father.  As to Father, the court ordered him to submit to on-demand drug and alcohol testing, and to take all prescribed psychotropic medications.  His case plan included participating in parenting classes, sex abuse counseling for perpetrators, and mental health counseling.  The court also ordered Father's visits to be monitored and stated

6

that Father's services would commence once he was released from custody.

Father filed a timely appeal.

**5.  Postappeal order**

At the review hearings held on July 29, 2024, and April 2, 2025 respectively, the juvenile court terminated jurisdiction over A.G. and I.G., declared them nonminor dependents because they both turned 18 years old, and placed them under extended foster care under Welfare and Institutions Code[1] section 303.  DCFS requests this court take judicial notice of the juvenile court's orders from the hearings held during the pendency of this appeal. We grant DCFS's unopposed request.  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

**DISCUSSION**

**1.  Discretionary review of Father's moot appeal as to adult children A.G. and I.G. is warranted**

DCFS urges this court to dismiss Father's appeal as to A.G. and I.G. because both children turned 18 years old during the pendency of this appeal.  A.G. is now 19 years old, and I.G. is now 18 years old.

Generally, when minors turn 18, they are no longer subject to juvenile court jurisdiction, rendering any appeal moot.  (*In re Emily L.* (2021) 73 Cal.App.5th 1, 14.)  Even assuming Father's appeal is moot for the adult children as DCFS contends, we retain discretion to consider Father's challenge to jurisdictional findings.  Our Supreme Court has explained that a court's duty is " ' "to decide actual controversies by a judgment which can be

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

7

carried into effect, and not to give opinions upon moot questions
. . . .” ’ ” (*In re D.P.* (2023) 14 Cal.5th 266, 276.) And “[a] case
becomes moot when events ‘ “render[] it impossible for [a] court, if
it should decide the case in favor of [appellant], to grant him any
effect[ive] relief.” ’ ” (*Ibid.*) Since “ ‘the critical factor’ ” in
determining whether the appeal is moot is “ ‘whether the
appellate court can provide any effective relief,’ ” we must “decide
on a case-by-case basis whether it is appropriate to exercise
discretionary review to reach the merits of a moot appeal.” (*Id.* at
pp. 276, 287.)

When considering whether to exercise our discretion to
review a moot appeal, one of the factors to consider is “whether
the jurisdictional finding is based on particularly pernicious or
stigmatizing conduct.” (*In re D.P.*, *supra*, 14 Cal.5th at pp. 285–
286.) A sexual abuse finding, specifically, “carries a particular
stigma.” (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) This is
true because when an adult sexually abuses a child, it constitutes
an abandonment of the parental role as well as “ ‘a fundamental
betrayal of the appropriate relationship between the
generations.’ ” (*In re I.J.* (2013) 56 Cal.4th 766, 778.) Relatedly,
we look to whether “the findings against the parent who has
appealed are based on more serious conduct.” (*In re D.P.* at
pp. 286.) “The more egregious the findings against the parent,
the greater the parent’s interest in challenging such findings.”
(*Ibid.*) In these circumstances, “it may serve the interest of
justice to review the parent’s appeal.” (*Ibid.*)

Here, the trial court exercised jurisdiction over the eldest
daughter A.G. and the eldest son I.G. based on a finding that
Father sexually abused A.G. The trial court’s sexual abuse
finding is precisely the kind of “more serious conduct” that

8

warrants judicial review.  (*In re D.P.*, *supra*, 14 Cal.5th at p. 286.)
In addition, the sexual abuse jurisdictional finding here carries
unique stigma, beyond the stigma associated with other bases of
jurisdiction.  (*In re M.W.*, *supra*, 238 Cal.App.4th p. 1452.)
Moreover, the same acts affecting jurisdiction for the now adult
children are at issue for the minor children, and Father continues
to be affected by dispositional orders affecting the minor children
as explained below.  Consequently, given the nature of the
findings here and because we reach the merits of the
jurisdictional findings for the minor children, we do the same for
the findings for A.G. and I.G. who are no longer minors.

2.    **Father's appeal is not moot as to younger siblings
      Alexis and Isaac**

DCFS argues we should also dismiss Father's appeal as to
the minor siblings Alexis, now age 17, and Isaac, age 16, because
Father does not challenge the jurisdictional findings against
Mother.  DCFS also contends Father's challenge is not justiciable
because he has not identified specific, nonspeculative adverse
consequences that will affect him in the future.

Even where an alternative basis for jurisdiction exists
against another parent, a parent's appeal is not moot "when a
juvenile court's finding forms the basis for an order that
continues to impact a parent's rights."  (*In re D.P.*, *supra*,
14 Cal.5th at pp. 276, 283–284.)  We also consider "[w]hether or
not a parent has demonstrated a specific legal or practical
consequence that would be avoided upon reversal of the
jurisdictional findings" in determining whether the appeal is
moot.  (*Id*. at p. 283.)

While it is true that the jurisdictional findings against
Mother provide the trial court with a basis for continuing

9

jurisdiction regardless of the outcome of this appeal, we find two reasons to address the merits here.

First, as explained above regarding the adult children, the juvenile court's sexual abuse findings against Father define very serious conduct, which weighs in favor of review. The same is true for the younger children as the finding that Father sexually abused A.G. is the trial court's basis for finding the younger children, Alexis and Isaac, at risk of sexual abuse from Father.

Second, the trial court's finding that Alexis and Isaac are at risk of being abused by Father " 'serves as the basis for dispositional [case plan] orders that are also challenged on appeal.' " (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.) Similarly, Father identifies a " 'specific legal or practical consequence' " to the jurisdictional findings, namely that the trial court ordered him to complete random drug testing, mental health counseling, and sex abuse counseling. (*Ibid.*) In addition, the trial court ordered that he is to have monitored visits, which restricts the circumstances under which he can see his minor children. (*Ibid.*) Consequently, Father presents multiple adverse consequences to the jurisdictional order here, which support reaching the merits of his appeal.

Thus, in summary, we reach the merits of Father's appeal in its entirety. (*In re D.P.*, *supra*, 14 Cal.5th at p. 283 ["where a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"].) We address whether jurisdiction was appropriate for Father's now adult children, A.G. and I.G, as well as the children who remain minors, Alexis and Isaac.

3. **Substantial evidence supports the jurisdictional findings against Father**

   3.1. **Applicable law and standard of review**

The juvenile court found true an allegation that Father sexually abused his daughter A.G. when she was about four years old, and found jurisdiction based on section 300, subdivision (d). The trial court also asserted jurisdiction over the younger siblings, I.G., Alexis, and Isaac, under section 300, subdivision (j), because it found Father's sexual abuse of A.G. placed her younger siblings at risk.

Section 300, subdivision (d) provides, in pertinent part, that a child comes within the jurisdiction of the juvenile court if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by the child's parent . . . or a member of the child's household . . . or the parent or guardian has failed to adequately protect the child from sexual abuse . . . ." (*Ibid*.) In the context of addressing sexual abuse, the Supreme Court explained " '[s]ome risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great.' " (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) For the court to determine whether a risk is substantial, " 'the court must consider both the likelihood that harm will occur and the magnitude of potential harm . . . .' " (*Ibid*.)

Under section 300, subdivision (j), a child comes within the jurisdiction of the juvenile court if "[t]he child's sibling has been abused or neglected . . . and there is a substantial risk that the child will be abused or neglected . . . ." (*Ibid*.) When "the petition alleges the child's sibling has been sexually abused under [section 300,] subdivision (d), the court can take jurisdiction under subdivision (j) if the evidence shows there is a substantial risk

11

that the child who is the subject of the dependency proceedings will be sexually abused." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843; see *In re I.J.*, *supra*, 56 cal.4th at p. 774.)

"In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings . . . , we determine if substantial evidence, contradicted or uncontradicted, supports them." (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*Ibid.*) " ' "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*Ibid.*)

### 3.2. Substantial evidence supports the juvenile court's jurisdictional finding over A.G.

On appeal, Father does not dispute that he sexually abused A.G. Instead, Father argues substantial evidence does not support the juvenile court's jurisdictional findings. He argues A.G. does not face a current risk of harm, because (1) the abuse occurred only once, (2) he has not had any contact with A.G. for 14 or 15 years since shortly after the abuse occurred, (3) A.G. no longer wants any contact with him, and (4) A.G. no longer needs any protection from the court because she is now 18 years old.

First, we note that appellate courts have affirmed the exercise of jurisdiction after finding a single occurrence of sexual abuse. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433, 1439.) Here, as discussed below, we need not reach the question of whether Father's single act of abuse targeting A.G. supports

jurisdiction because the record presents additional risk factors. Regardless, ample evidence supports the trial court's finding that Father sexually abused A.G. She disclosed the sexual abuse to Mother four years before the dependency case, and A.G reported the abuse again in 2024 when DCFS interviewed her. A.G. also described the particulars of how Father sexually abused her. Alexis and Isaac also confirmed that A.G. told them Father sexually abused her. Although Father denied abusing A.G. to DCFS, the trial court found A.G.'s statements of Father's sexual abuse to be credible, and discounted Father's denial.

Second, Father argues A.G. does not face a current risk of harm because he had no contact with A.G. for the past 14 years, shortly after the abuse occurred. Father cites *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962 (*In re K.R.*), but that case does not assist Father. There, DCFS filed a petition alleging that a father sexually abused his stepdaughter for multiple years but not his younger biological daughter. (*Id*. at p. 964.) The last sexual abuse occurred five or six years before DCFS filed its petition. (*Ibid*.) Thereafter, the mother stopped the sexual abuse by putting locks on the daughters' doors and taking the keys away from the father. (*Id*. at p. 965.) After finding the sexual abuse occurred, the juvenile court dismissed jurisdiction as to both daughters. (*Id*. at p. 966.) Prior to the jurisdictional hearing, the stepdaughter turned 18, but the younger daughter remained a minor. (*Id*. at p. 965.) DCFS appealed the dismissal of jurisdiction regarding the minor daughter. (*Ibid*.) In reversing the trial court order, our colleagues in Division Five explained, "The juvenile court's finding that there has been 'time' . . . since father last abused his stepdaughter [], does not provide sufficient

13

evidence in support of dismissal as to [the sibling]" because "it was mother's installation of locks on the doors and taking father's key that likely stopped the abuse . . . ." (*Id.* at p. 970.) Here, like the parent who used locks to protect her daughters from a parental abuser, Mother moved her children hundreds of miles away from Father after he abused A.G., and the passage of years does not necessarily negate the risk that Father poses to his children. (*Ibid.*) Moreover, in granting a different dependency writ regarding a father who committed sex offenses with two different boys, our colleagues in Division Five ruled, "[t]he weight given to the passage of time is even less substantial considering that father had been in confinement, with no access to potential child victims, for 20 years . . . ." (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 222 Cal.App.4th 149, 162 (*In re S.G.*).) This is especially true here, where Father abused his two stepsons before abusing his biological daughter. Because Father repeatedly sexually abused his children when he had them in his care, the trial court correctly recognized the risk Father presented to his children.

Third, Father's argument that there is no current risk of sexual abuse to A.G. because she no longer wants any contact with him lacks merit. When the trial court asserted jurisdiction, Father plainly expressed a desire to be involved in the children's lives. As Father's trial counsel argued, Father was "trying to work his way back into gaining the favor of getting into the children's lives again." Thus, because Father was attempting to reunify with A.G., his argument that he would not be able to get involved in A.G.'s life again fails.

Fourth, Father also argues that A.G. no longer needs any protection from the court because she is now an adult. However,

14

on appeal, we consider whether A.G. was at risk of abuse at the time the jurisdictional hearing took place, and A.G. was still a minor at the time of the jurisdictional hearing. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134)

Finally, there is no evidence in the record that Father participated in any therapy or classes to ameliorate the risk of further abuse during the time he was away from A.G. and her siblings. (*In re J.K.*, *supra*, 174 Cal.App.4th at p. 1439 [future risk existed where the father failed to take steps to address his behavior]; *In re K.R.*, *supra*, 215 Cal.App.4th at p. 970 [found father posed future risk noting his failure to complete sexual abuse education].) We therefore conclude that the jurisdictional finding was supported by substantial evidence that A.G. faced a risk of harm at the time of the hearing.

### 3.3. Substantial evidence supports the juvenile court's jurisdictional finding over the siblings

Citing *In re I.J.*, *supra*, 56 Cal.4th 766, Father argues A.G.'s siblings, I.G., Alexis, and Isaac, were not at any risk of sexual abuse by Father at the time of the jurisdictional hearing based on the fact he sexually abused A.G. one time when she was four years old. Similarly, he asserts there is no basis to assert dependency jurisdiction over A.G.'s teenage siblings based on the sexual abuse that took place 14 years ago, given that none of the children wish to even speak to him. We find his arguments lack merit.

As explained earlier, we find substantial evidence supported the juvenile court's exercise of jurisdiction over A.G., and we find a similar analysis largely applies to A.G.'s siblings. They were also at risk due to Father's history of sexually abusing his children.

15

In *I.J.*, the Supreme Court affirmed the juvenile court's finding that there was a substantial danger to the younger siblings of a daughter who was sexually abused by the father. (*In re I.J.*, *supra*, 56 Cal.4th at p. 780.) There, the father argued that substantial evidence did not support the juvenile court's finding that his sons were also at risk of sexual abuse because he only sexually abused his female daughter. (*Id.* at p. 772.) The Supreme Court explained that the broad language of section 300, subdivision (j), "accords the trial court greater latitude to exercise jurisdiction as to [the children] whose sibling has been found to have been abused." (*In re I.J.*, at p. 774.) The high court elaborated that in determining whether the sibling risk is substantial, "the court must consider both the likelihood that harm will occur and the magnitude of potential harm." (*Id.* at p. 778, citing *People v. Hall* (Colo. 2000) 999 P.2d 207, 217–218.) "[I]t becomes more necessary to protect the child" when the abuse is increasingly serious. (*Ibid.*)

Here, this case presents serious risk factors beyond those found sufficient to establish jurisdiction in *I.J.* Unlike the father in *I.J.* who abused one child, Father abused three of his children including a biological child. In addition, unlike the father in *I.J.*, Father sexually abused both male and female children. We now turn to Father's arguments.

First, as above, Father argues that he abused A.G. only once, and his other children face no risk. However, as the record establishes, Father has repeatedly abused his children, leaving three victims. (*In re Andy G.* (2010) 183 Cal.App.4th 1405, 1415 [risk to minor son due to father's sexual abuse of the minor's two half siblings].)

16

Second, similar to his argument with A.G., he argues 14 years have passed since he abused A.G. However, as above, he has not had the opportunity to abuse his children as Mother moved away with children shortly after he abused A.G. (See *In re K.R.*, *supra*, 215 Cal.App.4th at p. 970; see also *In re S.G.*, *supra*, 222 Cal.App.4th at p. 162.)

Third, as above, Father argues that his children have no interest in talking to him. However, Father expressed a desire to reunify with the children and has a case plan to assist him with reunification. Therefore, we cannot rule out the possibility that Father will reunite with his minor children.

Finally, as we note above, Father has not engaged in therapy to address his history of sexual abuse. (See *In re J.K.*, *supra*, 174 Cal.App.4th at p. 1439.)

Here, ample evidence and "all reasonable inferences that could be drawn from the evidence" allowed the juvenile court to find A.G.'s siblings were at risk of sexual abuse by Father within the meaning of section 300, subdivision (j). (*In re R.V.*, *supra*, 208 Cal.App.4th at p. 848.)

## DISPOSITION

The juvenile court's jurisdictional orders and findings are affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

RUBIN, J.*

---

*     Retired Presiding Justice of the Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18